AT&T Agreement No.: 20140407.050.C

# NETWORK AFFILIATION AGREEMENT

This Network Affiliation Agreement (the "<u>Agreement</u>"), which shall be deemed effective on the date it is signed by the last party ("<u>Effective Date</u>"), is being entered into by and between AT&T Services, Inc., a Delaware corporation, with offices located at 208 S. Akard Street, Dallas, Texas, 78202, on behalf of itself and its Affiliated Entities ("<u>AT&T</u>") and Herring Networks, Inc. (successor-in-interest to Herring Broadcasting Company, Inc.), a California corporation, with offices located at 4757 Morena Blvd., San Diego, California 92117 ("<u>Network</u>"), for distribution of the linear programming services currently known as "AWE" (formerly "Wealth TV") and "One America News Network"."  AT&T and Network may also be individually referred to herein as a "<u>Party</u>", and collectively as the "<u>Parties</u>".

In consideration for the mutual promises, agreements and other valuable consideration, the receipt and sufficiency of which each Party hereby acknowledges, the Parties agree to the following terms and conditions:

**1.    DEFINITIONS.**  For purposes of this Agreement, the terms below shall have the meanings ascribed to them as follows:

A. 

B. "<u>Affiliated Entity(ies)</u>" means any person(s) and/or entity(ies) that controls, is controlled by, or under common control with a Party to this Agreement; <u>provided</u> notwithstanding the foregoing, it is understood and agreed that AT&T Inc. shall not be deemed to be a party to this Agreement.

C. 

D. 

E. 

F. 

G. 



AT&T Agreement No.: 20140407.050.C

Y. 

Z.

AA.

BB. "System(s)" means (i) AT&T's IPTV System(s) which generally consists of a national earth station receive and Internet protocol video aggregation center(s) ("Super-Hub Offices" or "SHO(s)"), national closed fiber optic IP network, video hub offices ("VHOs") (including, without limitation, all SHOs and VHOs deployed on the System following the Effective Date, and during the Term, of this Agreement), local distribution plant and related facilities that utilize an Internet protocol on such network to transmit data, information and video comprised of packetized data, including mobile wireless and wired technology used as a necessary part of AT&T's infrastructure and related facilities (such as closed private VPN back-office facilities, digital subscriber line (DSL) facilities and/or wireless "hops") and the use of encrypted wireless-in-home networking technologies (e.g., in-home WiFi) for on-premise viewing by AT&T Subscribers ("IPTV System"), and/or (ii) any other multichannel video programming system as defined by the FCC (e.g., cable, direct broadcast satellite, satellite master antenna) (an "MVPD System"); each in the case of (i) and (ii), that is (a) utilized by AT&T for the transmission of video programming services to Subscribers, (b) majority-owned and/or controlled (including by contract) by AT&T, and (c) located within the Territory.

CC. 

DD.

EE.

CONFIDENTIAL AND PROPRIETARY INFORMATION

AT&T Agreement No.: 20140407.050.C

G. 

**3. TERM AND TERMINATION.**

A. 

B. 

C. <u>Additional Termination Rights</u>. Notwithstanding any other provision of this Agreement, in the event that AT&T becomes a member of, or participant in,

CONFIDENTIAL AND PROPRIETARY INFORMATION

AT&T Agreement No.: 20140407.050.C

any programming buying group (e.g., The National Cable Television Cooperative) which has an agreement for carriage of a Service (a "Co-op Agreement"), AT&T shall have the right to opt into such Co-op Agreement in respect of the applicable Service upon written notice to Network. Following any such notice by AT&T, AT&T's carriage of the applicable Service shall be governed by such Co-op Agreement and this Agreement shall have no further force or effect with respect to AT&T's carriage of such Service. If the Co-op Agreement terminates prior to the Term or any renewal thereof of this Agreement, then AT&T may, in its sole discretion, (i) operate under any renewal of the Co-op Agreement or (ii) operate under this Agreement through the period from Termination of the Co-op Agreement through the Term or any renewal thereof of this Agreement. For the avoidance of doubt, if and to the extent AT&T must obtain Network's approval to join any Co-op, then this shall constitute Network's pre-approval and Network shall not in any way attempt to block or otherwise frustrate AT&T's entry into any such Co-op. ==Upon sixty (60)-days advance written notice to Network, AT&T may terminate this Agreement in full if AT&T ceases operation of the System(s) as a whole, or if AT&T discontinues its delivery of video programming in any geographic area(s) being served by the System(s), then AT&T can terminate this Agreement as to such geographic area(s).== Network shall have the right to terminate this Agreement upon sixty (60) days advance written notice if it no longer distributes a Service to any Other Distributor in the Territory.

4.  **EXISTING SYSTEM(S); ACQUIRED SYSTEM(S); DIVESTED SYSTEM(S)**

    A. 

    B.  Acquired System(s). If, on or after the Effective Date of this Agreement, AT&T, (i) acquires ownership and/or ownership or managerial control of one or more Systems that is/are distributing or is/are otherwise obligated to launch or distribute a Service (whether or not such Service has theretofore been launched on such system) including, without limitation, a System(s) that is acquired by AT&T and which may or may not be, at AT&T's sole option, converted to IP technology and/or consolidated with the IPTV System(s) as part of a clustering strategy, and/or (ii) constructs a System which, in the case of both (i) and (ii), meets the definition of a "System" hereunder (each an "Acquired System"), then AT&T shall have the Acquired System(s) be subject to the terms of this Agreement beginning on the date on which such acquisition is consummated or such newly built System commences commercial operations, as applicable, or (b) to the extent the Acquired System

AT&T Agreement No.: 20140407.050.C

has a preexisting affiliation agreement with Network for carriage of a Service ("Acquired Agreement"), then notwithstanding anything to the contrary, to have the Acquired System continue to operate under the Acquired Agreement throughout the remainder of the term of such Acquired Agreement, or (c) to terminate this Agreement and have all of the AT&T's Systems, including the Acquired System(s), be governed by the terms of the Acquired Agreement throughout the remainder of the term of such Acquired Agreement. Notwithstanding the foregoing, the Parties hereby acknowledge and agree that any SHO(s) and/or VHO(s) that is launched after the Effective Date of this Agreement as part of AT&T's existing IPTV System(s) shall not be deemed an "Acquired System" for purposes of this Agreement. For the avoidance of doubt, nothing herein shall obligate AT&T to launch and carry the Services on any System that AT&T acquires during the Term if such System is not already distributing or obligated to distribute the Services.

C. 

D.

E.

AT&T Agreement No.: 20140407.050.C



D. <u>Governing Law</u>. The obligations of AT&T and Network under this Agreement are subject to, and each of AT&T and Network agree to comply with, all applicable federal, state and local laws, rules and regulations. This Agreement and all matters or issues collateral thereto shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the laws, rules or principles of the State of California regarding conflicts of laws).

E. 

F. 

G. 

AT&T Agreement No.: 20140407.050.C

O. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

P. Entire Agreement; Amendments; Waivers; Cumulative Remedies. This Agreement, including any and all Exhibits and Schedules attached hereto, constitutes the entire agreement and understanding between the Parties with respect to the subject matter hereof and supersedes all prior and/or contemporaneous, express or implied, written or oral, agreements, representations and conditions between the Parties with respect thereto. This Agreement may only be amended or modified by a written agreement of both Parties. No provision of this Agreement shall be deemed waived by either Party unless such waiver is reduced to writing and signed by the Party against whom such waiver is sought to be enforced. No waiver of any breach of any provision hereof shall be or be deemed to be a waiver of any preceding or subsequent breach of the same provision or any other provision of this Agreement. Notwithstanding anything to the contrary, all remedies, whether at law, in equity or pursuant to this Agreement shall be cumulative.

Q. 

[Signature Page Follows]

AT&T Agreement No.: 20140407.050.C

The Parties hereto have executed this Agreement as of the Effective Date.

| AGREED AND ACCEPTED BY: | | AGREED AND ACCEPTED BY: | |
|---|---|---|---|
| **AT&T SERVICES, INC.** | | **HERRING NETWORKS, INC.** | |
| By: | *Carmen Mortenson* | By: | *Charles P. Herring* |
| Printed Name: | Carmen Mortenson for Rachel Kutz | Printed Name: | Charles P. Herring |
| Title: | AVP – Cons. + Corp. Supply Chain | Title: | President |
| Date: | 4/10/14 | Date: | April 7, 2014 |