MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
JAMES L. ZELENAY, JR., SBN 237339
  jzelenay@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

JAMES C. HO (*pro hac vice* admitted)
  jho@gibsondunn.com
ASHLEY E. JOHNSON (*pro hac vice* admitted)
  ajohnson@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue
Dallas, TX  75201
Telephone:  214.698.3100
Facsimile:   214.571.2900

Attorneys for Defendants
AT&T Services, Inc. and AT&T Inc.,
Appearing Specially

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., a California corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>AT&T SERVICES, INC., a Delaware corporation; and AT&T INC., a Delaware corporation,<br><br>            Defendants. | CASE NO. 16-cv-01636-CAS-AGR<br><br>**AT&T SERVICES, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM** [F.R.C.P. 12(b)(6) AND 9(b)]<br><br>**Hearing:**<br>Date:        June 27, 2016<br>Time:        10:00 a.m.<br>Place:       Courtroom 5<br>Judge:      Hon. Christina A. Snyder |

Gibson, Dunn & Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 2

    A.  Herring's Attempt To Rehabilitate Its Fraud Claims Fails. ....................... 2

        1.  Herring Does Not Allege Facts That Plausibly Demonstrate Fraud. ........................................................................ 2

            (i)  All of AT&T's Predictions about the Future of U-verse Are Either Non-Actionable Opinions about Future Events or Puffery. ................................. 2

            (ii)  Herring's Assertion that AT&T Falsely Stated Its Own Intent Is Not Pled with the Requisite Particularity. ............................................................. 4

            (iii)  Herring's Attempt to Minimize *Iqbal* Is Unavailing. ................................................................ 7

        2.  Herring Does Not Plausibly Allege Justifiable Reliance. ................................................................................... 9

        3.  Herring Does Not Plausibly Allege that It Relied to Its Detriment on AT&T's Statements or Suffered Any Resulting Harm. ..................................................................... 10

        4.  Herring's Fraud Claims Are Barred by the Economic Loss Rule. ............................................................................ 13

    B.  Herring's Implied Covenant Claim Would Impermissibly Amend the Contract. ............................................................................................. 14

    C.  Herring's Lobbying Claims Do Not Allege a Valid Contractual or Quasi-Contractual Theory. ..................................................................... 15

        1.  Herring Implicitly Concedes that the Alleged Agreement Is No More Than an Agreement To Agree. ....... 15

        2.  Herring's Proposed "New" Contract Is Unenforceable Because It Is Not in Writing. ................................................ 16

    D.  Herring's Citation of Five Paragraphs in Which It Purportedly Distinguished AT&T Services, Inc. and AT&T Inc. Is Inadequate. ....... 18

III.  CONCLUSION ................................................................................................. 19

Gibson, Dunn & Crutcher LLP

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**Page(s)**

4

**Cases**

5

6

*Avidity Partners, LLC v. State of Cal.*,
　221 Cal. App. 4th 1180 (2013) ...................................................................... 14, 15

7

8

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................................................... 10

9

10

*Bing Ting Ren v. Wells Fargo Bank, N.A.*,
　No. 13-0272 SC, 2013 WL 2468368 (N.D. Cal. June 7, 2013) .............................. 17

11

12

*California Pub. Empls.' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*,
　226 Cal. App. 4th 643 (2014) ............................................................................ 6, 7

13

*Cansino v. Bank of America*,
　224 Cal. App. 4th 1462 (2014) ............................................................................ 3

14

15

*In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*,
　882 F. Supp. 915 (C.D. Cal. 1994) ..................................................................... 3, 4

16

17

*In re Century Aluminum Co. Sec. Litig.*,
　729 F.3d 1104 (9th Cir. 2013) .................................................................... 7, 8, 9

18

19

*Conley v. Matthes*,
　56 Cal. App. 4th 1453 (1997) .............................................................................. 16

20

21

*Destfino v. Reiswig*,
　630 F.3d 952 (9th Cir. 2011) .............................................................................. 18

22

23

*Doe v. U.S. Dep't of Justice*,
　753 F.2d 1092 (D.C. Cir. 1985) ......................................................................... 13

24

25

*Eade v. Reich*,
　120 Cal. App. 32 (1932) .......................................................................................... 6

26

*Gen. Signal Corp. v. MCI Telecomms. Corp.*,
　66 F.3d 1500 (9th Cir. 1995) ............................................................................ 5, 6

27

28

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

## TABLE OF AUTHORITIES *(continued)*

Page(s)

*Gerritsen v. Warner Bros. Entm't, Inc.*,
116 F. Supp. 2d 1104 (C.D. Cal. 2015) ................................................................. 8, 9

*Gilligan v. Jamco 23 Dev. Corp.*,
108 F.3d 246 (9th Cir. 1997) .................................................................................... 13

*Guz v. Bechtel Nat'l Inc.*,
24 Cal. 4th 317 (2000) ................................................................................................ 15

*Haggard v. Kimberly Quality Care, Inc.*,
39 Cal. App. 4th 508 (1995) ...................................................................................... 16

*Herrejon v. Ocwen Loan Servicing, LLC*,
980 F. Supp. 2d 1186 (E.D. Cal. 2013) .................................................................. 10

*Kansas City, St. L. & C. R. Co. v. Alton R. Co.*,
124 F.2d 780 (7th Cir. 1941) .................................................................................... 12

*Las Palmas Assocs. v. Las Palmas Ctr. Assocs.*,
235 Cal. App. 3d 1220 (1991) .................................................................................... 5

*Lennar Mare Island, LLC v. Steadfast Ins. Co.*,
No. 2:12-cv-02182-KJM-KJN, 2016 WL 829210 (E.D. Cal. Mar. 3,
2016) ............................................................................................................................ 13

*Malmstrom v. Kaiser Aluminum & Chem. Corp.*,
187 Cal. App. 3d 299 (1986) .............................................................................. 16, 17

*Marble Bridge Funding Grp., Inc. v. Liquid Capital Exch., Inc.*,
No. 5:15-cv-00177-EJD, 2015 WL 5654844 (N.D. Cal. Sept. 25, 2015) ............... 18

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) .................................................................. 12

*In re Mellanox Techs., Ltd. Sec. Litig.*,
No. 13-cv-04909-JD, 2014 WL 7204864 (N.D. Cal. Dec. 17, 2014) ........................ 4

*Mora v. U.S. Bank*,
2015 WL 4537218 (C.D. Cal. July 27, 2015) ......................................................... 12

Gibson, Dunn &
Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Muse Brands, LLC v. Gentil*,
   No. 15-cv-01744-JSC, 2015 WL 4572975 (N.D. Cal. July 29, 2015) ......................5

*Performance Plastering v. Richmond Am. Homes of Cal., Inc.*,
   153 Cal. App. 4th 659 (2007) ....................................................................17

*Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*,
   55 Cal. 4th 1169 (2013) ..............................................................................5

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ..............................................................................13

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .................................................................3, 4

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .....................................................................7

*Tenzer v. Superscope Inc.*,
   39 Cal. 3d 18 (1985) ...................................................................................5

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) ..................................................18, 19

*TRC & Assocs. v. NuScience Corp.*,
   No. 2:13-cv-6903-ODW, 2013 WL 6073004 (C.D. Cal. Nov. 18,
   2013) .........................................................................................................18

*U.S. v. Citizens and Southern Nat. Bank*,
   422 U.S. 86 (1975) .....................................................................................10

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..................................................5, 19

*West v. W. Cas. & Sur. Co.*,
   846 F.2d 387 (7th Cir. 1988) .......................................................................4

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................4

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1

## TABLE OF AUTHORITIES *(continued)*

2

<u>Page(s)</u>

3

**Rules**

4

5

Federal Rule of Civil Procedure 8 ................................................................. 13

6

Federal Rule of Civil Procedure 9 ....................................................... 1, 4, 11, 12, 13

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

v

## REPLY MEMORANDUM

## I.   INTRODUCTION

Herring Networks entered into a contract with AT&T for Herring's programming to appear on U-verse, not on DirecTV (the "Agreement"). The Agreement contemplates that AT&T can cease operating U-verse altogether, and goes out of its way to permit AT&T to terminate the Agreement in certain geographic areas if it ceases delivery of video programming in those areas, to acquire a new video platform like DirecTV, and to do so without any obligation to carry Herring's programming on the new platform.

Herring attempts to avoid the express terms of its Agreement by putting forth various theories of fraud. These fraud allegations, however, fall far short of the pleading requirements set forth in Rule 9(b) and *Twombly*. Tellingly, Herring does not address any of the case law cited by AT&T, instead dismissing those cases, en masse and without explanation, as "inapposite" or "distinguishable." At the end of the day, Herring is simply alleging that AT&T expressed undue confidence about the future of U-verse. But a failure to predict the future accurately is not fraud. Nor is it fraud to change one's business strategy in response to changed circumstances.

What's more, Herring does not allege how it was harmed by any alleged fraud. Herring's theory appears to be that, but for any alleged fraud, it would not have signed the contract as written. But what would Herring have done instead? If Herring is suggesting it would have walked away from the contract, that suggestion is not a plausible theory of damages. Signing the contract *helped* Herring, and made money for Herring. Underlying Herring's Complaint is its assertion that it wanted **more** distribution, not less. Alternatively, if Herring is suggesting that it would have insisted on a contract that required AT&T to carry Herring on DirecTV, Herring has supplied no reason to believe AT&T would have agreed to such terms. It is not clear which theory Herring is actually alleging here (and to satisfy *Iqbal* and Rule 9(b), it must

Gibson, Dunn & Crutcher LLP

1

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

choose one).  Ultimately, however, this does not matter because neither theory alleges a plausible claim for relief.

Herring also invokes the implied covenant of good faith and fair dealing.  That doctrine, however, does not allow parties to invent new substantive rights such as a guaranteed subscriber base, that appear nowhere in the Agreement.  Herring's Lobbying Claims fail for similar reasons:  Herring is claiming a right to appear on DirecTV that appears nowhere in the fully integrated Agreement, and was not the subject of any other enforceable, reduced-to-writing contract.  Herring has pled, at most, an agreement by AT&T to negotiate over Herring's desire to appear on DirecTV, not an agreement that Herring's channels would definitively be carried there.

In sum, Herring's Opposition does nothing to rehabilitate the fatal pleading defects in its Complaint that require dismissal.

## II.   ARGUMENT

### A.   Herring's Attempt To Rehabilitate Its Fraud Claims Fails.

#### 1.   Herring Does Not Allege Facts That Plausibly Demonstrate Fraud.

Herring's Fraud Claims are based on two types of alleged misrepresentations:  (1) allegedly false predictions that U-verse would grow (Compl. ¶¶ 28, 33), and (2) allegedly false statements that AT&T intended to promote U-verse.  (Compl. ¶¶ 27, 29, 33, 83.)  Neither theory alleges a false statement of existing fact, as required to state a claim for fraud.  Thus, Herring's first set of allegations fails because AT&T's alleged predictive statements are non-actionable opinions about future events or puffery.  And its second set of allegations fails because Herring does not plead any facts plausibly suggesting that AT&T's statements about its intentions were false when made.  As a result, Herring's Fraud Claims must be dismissed.

##### (i)   All of AT&T's Predictions about the Future of U-verse Are Either Non-Actionable Opinions about Future Events or Puffery.

Herring alleges that AT&T made various statements that optimistically

predicted a bright future for U-verse.  For example, Herring alleges that AT&T predicted that U-verse would "captur[e] more market share" and would "challenge and surpass Time Warner Cable."  Compl. ¶ 28.  The cases cited by AT&T (which Herring lumps together and labels "inapposite" without explanation, Opp. at 10) squarely hold that such statements are non-actionable because they are either predictions about future events or puffery.

"The law is well established that actionable misrepresentations must pertain to past or existing material facts," and that "[s]tatements or predictions regarding future events are deemed to be mere opinions which are not actionable."  *Cansino v. Bank of America*, 224 Cal. App. 4th 1462, 1469 (2014).  Even Herring acknowledges that "mere predictions are not actionable."  Opp. at 10 n.2.  It nevertheless dismisses *Cansino* and similar cases as "deal[ing] with highly contingent possibilities or vague generalities about the future."  Opp. at 10.  But there is no support for limiting *Cansino* in this manner.  *Cansino* requires dismissal of Herring's Fraud Claims to the extent they rest on predictions about the future of U-verse.

Herring also contends that "verifiably false" statements are not puffery.  Opp. at 10 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997), and *In re Century 21-RE/MAX Real Estate Adver. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994)).  Both cases on which Herring relies involve verifiably false representations about *existing* facts.  In *Southland*, for example, the defendant represented that based on "tests conducted by [its] research farm," its product required "50% Less Mowing."  *Southland*, 108 F.3d at 1145.  The court held that the "50% Less Mowing" statement was actionable as a "misdescription[] of specific or absolute characteristics of a product."  *Id.*  In contrast, Herring cannot seriously suggest that AT&T has engaged in a "misdescription[] of specific or absolute characteristics of a

Gibson, Dunn &
Crutcher LLP

3
AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1   product." *Id.*[1]

2   Far more analogous are the cases cited by AT&T that dismiss fraud allegations

3   based on general predictions of success, such as "'industry leading' growth" and

4   "'continuing improvements,'" or predictions that the defendant "will continue to grow"

5   and "intend[s] to increase our market share to 30% and more." *In re Wet Seal, Inc.*

6   *Sec. Litig.*, 518 F. Supp. 2d 1148, 1167-69 (C.D. Cal. 2007); *In re Mellanox*

7   *Technologies, Ltd. Sec. Litig.*, No. 13-cv-04909-JD, 2014 WL 7204864, at *3 (N.D.

8   Cal. Dec. 17, 2014).[2]   AT&T's alleged statements about U-verse's future are highly

9   similar to these statements and likewise are not actionable.

10   **(ii)   Herring's Assertion that AT&T Falsely Stated Its Own Intent Is Not Pled with the Requisite Particularity.**

11   Alternatively, Herring alleges that AT&T misrepresented its own intentions

12   regarding U-verse.  Those allegations also fail to state a claim because Herring has

13   failed to plead any facts suggesting that AT&T's alleged statements were false when

14   made, let alone with the particularity required by Rule 9(b).  Instead, Herring relies on

15   a single authority establishing an obvious proposition:  when a factfinder considers

16   whether a promise was fraudulent, it has "some evidentiary value" that the promise

17

18   [1]   *In re Century 21-RE/MAX*, 882 F. Supp. at 926, is similar.  The plaintiff real estate

19   company sued the defendant for allegedly falsely stating that defendant outsold

20   other realtors "3 to 1." *Id.*  The Court held that this adequately stated a Lanham Act claim (a claim that is "not subject to the strict pleading requirements of Rule 9 fraud

21   claims") because it "could reasonably be interpreted as making a claim based on total transactions of the RE/MAX organization." *Id.* at 927.  This data-driven

22   representation about existing sales is far different from AT&T's alleged predictions about U-verse's future.

23   [2]   Herring contends that *West v. W. Cas. & Sur. Co.*, 846 F.2d 387 (7th Cir. 1988), on

24   which AT&T relied in its Motion, supports Herring's view because the court upheld a jury verdict of fraud on the facts before it.  Opp. at 10.  *West*'s outcome,

25   however, does not change its rule of law, which is that a "statement that merely expresses an opinion or that relates to future or contingent events, rather than past

26   or present facts, does not constitute an actionable misrepresentation." *West*, 846 F.2d at 393.  The court upheld the jury verdict of fraud because the jury concluded

27   that the defendant specifically misrepresented to the plaintiff the defendant's *existing* legal rights, and thus the defendant's statement, unlike AT&T's alleged

28   statements, pertained to present facts, not future events. *See id.* at 394.

Gibson, Dunn & Crutcher LLP

4

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1  was ultimately not performed.  Opp. at 11 (quoting *Las Palmas Assocs.v. Las Palmas*

2  *Ctr. Assocs.*, 235 Cal. App. 3d 1220, 1239-40 (1991)).  The question, however, is not

3  whether AT&T's alleged decision to focus on DirecTV to the detriment of U-verse is

4  "some eviden[ce]" of AT&T's intent over a year earlier; the question is whether

5  Herring has pled *with particularity* facts that make it plausible to infer that AT&T

6  misstated its intent at the time the statement was made.  Because Herring has failed

7  entirely to plead such facts, its allegations that AT&T misrepresented its intent should

8  also be dismissed.

9       Although Herring again dismisses AT&T's case law (again, without

10  explanation) as "readily distinguishable," that authority is directly on point.  Opp. at

11  12.  Notably, Herring concedes that *Muse Brands, LLC v. Gentil*, No. 15-cv-01744-

12  JSC, 2015 WL 4572975, at *5 (N.D. Cal. July 29, 2015), and *UMG Recordings, Inc. v.*

13  *Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109-10 (C.D. Cal. 2015) both

14  dismissed complaints that "failed to plead any facts from which [the] court could infer

15  promises were false when made except for eventual nonperformance."  Opp. at 12 n.4.

16  That is *precisely* the flaw in Herring's complaint.[3]

17       Herring offers only a single fact to support its allegation that AT&T's statement

18  of its intent to expand U-verse was false when made:  after the Agreement was signed

19  in April 2014, "*One month later*, in May 2014, AT&T publicly announced its plan to

---

21  [3]  Herring also asserts that three of AT&T's cases do not address the pleading
22  standard.  That is true; AT&T cited cases that establish that (1) fraud, as a matter of
    California law, requires more than mere nonperformance (*Riverisland Cold*
23  *Storage, Inc. v. Fresno- Madera Production Credit Ass'n*, 55 Cal. 4th 1169, 1183
    (2013) and *Tenzer v. Superscope Inc.*, 39 Cal. 3d 18 (1985)) and (2) for a shut-
24  down of a business to be actionable as fraud, the defendant must have made a "firm
    decision" to shut down when it makes a statement to the contrary (*Gen. Signal*
25  *Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1512 (9th Cir. 1995)).  But the
    point is that Herring must plead facts that plausibly suggest that discovery would
26  produce facts that would ultimately prove Herring's case.  The California law
    AT&T cites, which establishes that a claim for fraud requires more than
27  nonperformance, and more than a business change, demonstrates conclusively that
    pleading *only* nonperformance is inadequate to state a claim.

28

Gibson, Dunn &
Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1   acquire DirecTV for $65 billion."  Opp. at 11.  Herring then speculates that the "scale

2   of the AT&T/DirecTV acquisition" suggests that AT&T "knew its statements were

3   deceptive and false when made."  *Id*. at 12.

4   Herring's speculation is logically flawed and legally inadequate.  Separate and

5   apart from whether AT&T knew that it intended to explore an acquisition of DirecTV

6   in April 2014, Herring has pled no facts to suggest that AT&T additionally knew, as of

7   April 2014, that (1) it would reach a final agreement with DirecTV; (2) it would obtain

8   government approval of that acquisition *or*; (3) it would then attempt to move

9   subscribers from U-verse to DirecTV, as Herring alleges it ultimately did.  Indeed, to

10  adequately plead falsity in this circumstance, Herring must plead with particularity

11  facts suggesting that, in April 2014, AT&T had already made a "firm decision" *not* to

12  grow U-verse.  *Gen. Signal Corp.*, 66 F.3d at 1511-13.  Yet all Herring pleads with

13  respect to AT&T's alleged attempt to shift customers to DirecTV is that it happened;

14  Herring pleads no facts shedding light on when AT&T first contemplated that step,

15  much less when it made a "firm decision" to proceed in that manner.  It certainly does

16  not plead with particularity facts plausibly suggesting that AT&T made that decision

17  prior to execution of the Agreement.  And even if AT&T had decided on a DirecTV

18  strategy prior to the execution of the Agreement, it is just as plausible—if not more

19  plausible—that it still intended on promoting U-verse.  There were no guarantees that

20  any such merger would be successfully consummated, a fact admitted by Herring in its

21  Complaint.  (Comp. ¶¶ 48-54.)  It thus is entirely plausible that AT&T in April 2014

22  intended to continue growing its U-verse business for an indefinite period of time.

23  This distinguishes Herring's allegations from *Eade v. Reich*, 120 Cal. App. 32,

24  35-39 (1932), on which Herring relies, because *Eade* involved a statement of intent

25  that falsely reflected that intent when the statement was made.[4]  Because Herring has

26  _____

27  [4]  Similarly, *California Public Employees' Retirement System v. Moody's Investors Service, Inc.*, 226 Cal. App. 4th 643 (2014), is not on point because it addresses an

28  *(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

6

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1    not pled facts to establish the same is true here, Herring has not stated a claim for fraud

2    with respect to AT&T's alleged statements regarding its intent with respect to its future

3    conduct.

4    (iii)    **Herring's Attempt to Minimize *Iqbal* Is Unavailing.**

5         In the absence of any facts in its pleading establishing that AT&T made

6    statements that were false when made, Herring misstates the law.  Herring argues that

7    the Supreme Court's precedent in *Iqbal* has been strictly limited by Ninth Circuit case

8    law, and that a case is never dismissed simply because there is an obvious alternative

9    explanation for the facts alleged in the complaint.  Opp. at 13 (citing *Starr v. Baca*, 652

10   F.3d 1202, 1216 (9th Cir. 2011)).

11        Herring misstates the law and misapplies it to this case.  The Ninth Circuit has

12   been clear that, "[w]hen faced with two possible explanations, only one of which can

13   be true and only one of which results in liability, plaintiffs cannot offer allegations that

14   are 'merely consistent with' their favored explanation but are also consistent with the

15   alternative explanation."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108

16   (9th Cir. 2013).  Herring notes that, under *Starr*, a complaint survives a motion to

17   dismiss if there are "two alternative explanations, one advanced by defendant and the

18   other advanced by plaintiff, both of which are *plausible.*" Opp. at 13 (italics added).

19   But there is an important difference between "*possible*" and "*plausible.*"  It is not

20   enough for a plaintiff's theory to be "possible."  *In re Century Aluminum Co. Sec.*

21   *Litig.*, 729 F.3d at 1108.  And for a plaintiff's theory to be "plausible," "plaintiffs must

22   do more than allege facts that are merely consistent with both their explanation and

23   defendants' competing explanation."  *Id.*  The plaintiff in *Starr* met this standard of

24   plausibility, because he "alleged facts which, accepted as true, tended to exclude the

25   _____

26   *(Cont'd from previous page)*

27        allegation that the defendant misrepresented an *existing fact* about the "nature and
         quality" of an investment product.  *Id*. at 664; *see also* Opp. at 9.

28

7

Gibson, Dunn &
Crutcher LLP

1  possibility" that the competing alternative explanation was true. *Id*. In contrast, where
2  another explanation of the factual allegations is *fully consistent* with the facts alleged
3  in the complaint, and the plaintiff has failed to allege facts that tend to exclude that
4  alternative explanation, the court should dismiss the complaint. *Id*.

5       Here, Herring has failed to plead, or to offer in its response, *any* facts that tend
6  to exclude the obvious alternative explanation for its allegations: that AT&T intended
7  to focus on growing U-verse as it allegedly represented but, subsequently, ***after*** it
8  entered the Agreement, when it agreed to purchase DirecTV, as it worked to obtain
9  government approval for the purchase, and as it planned the consummation of the
10  purchase, AT&T's plans evolved. Herring also does not plead any facts to suggest that
11  AT&T had, by April 2014, given any consideration to—let alone **concluded**—how U-
12  verse and DirecTV would be integrated if the acquisition were ultimately successful.
13  Instead, Herring again simply asserts that the DirecTV acquisition must have been
14  contemplated by April 2014 (Opp. at 13), an assertion that does not exclude AT&T's
15  obvious alternative explanation, *i.e.*, that at that time it intended to promote and grow
16  U-verse. Indeed, absent an ability to see into the future, and know with certainty that
17  over a year later AT&T would clear all federal, state, and international regulatory
18  hurdles, as well as the shareholder-approval hurdle, to a merger and would own
19  DirecTV, what other present intent could AT&T have had?

20       In fact, this alternative explanation makes far more sense than the illogical story
21  Herring proffers. Herring's theory posits that AT&T was so determined to persuade
22  Herring to place its channels on U-verse, despite AT&T's supposed intention to try to
23  persuade customers to *leave* U-verse, that it lied about its plans for U-verse. Yet the
24  only supposed benefit that Herring claims AT&T would have obtained from taking this
25  counterintuitive action is that AT&T "would have leverage over Herring in negotiating
26  a carriage deal for DirecTV." Opp. at 9. Because this theory is absent from the
27  Complaint, it cannot be considered here. *Gerritsen v. Warner Bros. Entm't, Inc.*, 116

28

Gibson, Dunn & Crutcher LLP

8

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

F. Supp. 3d 1104, 1126 (C.D. Cal. 2015) ("As courts routinely recognize, it is improper for a plaintiff to assert an unpled theory of liability in opposition to a defendant's Rule 12(b)(6) motion to dismiss.").  In addition, this theory falls far short of offering a plausible explanation of AT&T's alleged conduct.  If AT&T had entered *no* contract with Herring regarding U-verse, AT&T would have had at least the same leverage with respect to carrying Herring on DirecTV as it had from entering a contract with Herring that provided carriage for Herring's channels only on U-verse. As a result, it is not plausible that an alleged desire for "leverage over Herring" would cause AT&T to make false statements to encourage Herring to enter a contract with AT&T regarding U-verse.  After all, placing Herring's channels on U-verse would present a risk that subscribers who liked those channels would view the absence of those channels on DirecTV as a factor weighing against moving to DirecTV, and thus could *decrease* AT&T's leverage in negotiating a carriage deal for DirecTV.

Herring thus not only fails to plead facts that tend to exclude AT&T's alternative explanation, the facts it does plead render its explanation of fraud implausible.  As a result, there are not two *plausible* explanations here; Herring's theory is, at best, a theoretically *possible* explanation that is not supported by any facts tending to exclude alternative explanations, and one that is facially implausible.  As such, Herring fails to state a claim as a matter of law.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108.

### 2.    Herring Does Not Plausibly Allege Justifiable Reliance.

Given the generality of the statements on which Herring claims to have relied, Herring has not sufficiently alleged that it justifiably relied on those statements in light of the remainder of the Agreement.  Herring responds that justifiable reliance is a question of fact.  True enough, but that has nothing to do with whether the issue has been adequately and plausibly pled.  *Twombly* itself addressed a Sherman Act claim in which the plaintiff failed to plead facts providing "plausible grounds to infer an

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). *Twombly* held that a plaintiff must plead "allegations plausibly suggesting (not merely consistent with) [an] agreement," *id.* at 557, even though ultimately whether an agreement exists is a question of fact. *See U.S. v. Citizens and Southern Nat. Bank*, 422 U.S. 86, 113-14 (1975).

Here, Herring admits that it was aware that AT&T might acquire a new video platform and that Herring would not have any right to be carried on that platform. Compl. ¶ 31. It goes without saying that, if AT&T acquired an alternative platform, the acquisition could impede U-verse. The Agreement went even further, providing that AT&T could "terminate this Agreement in full if AT&T ceases operation of the System(s) as a whole," and that "if AT&T discontinues its delivery of video programming in any geographic area(s) being served by the System(s), then AT&T can terminate this Agreement as to such geographic area(s)." (Smith Decl. Ex. A at 7-8, ¶ C.) Given the foregoing, Herring was aware that its revenue from U-verse might decline or even disappear, and thus it is not plausible for Herring to allege that it was justified in relying on more general predictions about the future of U-verse or expressions of optimistic intent.

### 3. Herring Does Not Plausibly Allege that It Relied to Its Detriment on AT&T's Statements or Suffered Any Resulting Harm.

Likewise, to state a claim for fraud, a plaintiff must plead that it "actually and justifiably relied upon the defendant's misrepresentation in acting to his *detriment*." *Herrejon v. Ocwen Loan Servicing, LLC*, 980 F. Supp. 2d 1186, 1203 (E.D. Cal. 2013) (emphasis added). Herring does not plausibly plead that its supposed reliance on AT&T's statements was detrimental to Herring in any way.

Herring's Opposition fails to rehabilitate the failure of its Complaint in this respect, by crafting a plausible theory of detrimental reliance and resulting harm. In fact, it *worsens* the problem. Based on the Complaint, AT&T deduced in its motion

Gibson, Dunn & Crutcher LLP

10

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

that Herring's unstated theory of harm must be that, absent the alleged fraud, it would have entered into a contract that lacked the Acquired Systems Clause. *See* Compl. ¶¶ 84-85 (alleging that, absent the claimed misrepresentations, Herring would not have agreed to the Acquired Systems Clause). Herring does not disavow this theory. In fact, it doubles down on it, asserting that it has suffered damages in excess of $100 million "as a result of AT&T's not putting its channels on DirecTV," a decision permitted by the Acquired Systems Clause. Opp. at 15. However, Herring also seems to suggest in its Opposition that, but for the alleged misrepresentations, it would not have entered into a contract with AT&T *at all*, and thereby would have saved on production costs. *Id*.

Neither theory makes sense. The theory that Herring and AT&T would have entered a contract without the Acquired Systems Clause if Herring had rejected that clause is pure speculation, and Herring does not argue otherwise. Herring does not assert, much less plead in its Complaint, any fact making it plausible that AT&T would have been willing to sign a contract without that clause.

Herring's new theory, that it suffered harm by entering into the Agreement at all, is even less supportable. Based on the facts alleged in the Complaint, Herring's entry into the Agreement *helped* Herring, rather than harming it. The Agreement made Herring money. At best, under Herring's new theory, it simply made less money than it had hoped, and Herring does not allege otherwise. Herring articulates no theory as to how a refusal to sign the Agreement, eschewing distribution on any AT&T platform, would have somehow earned it *even more* money, as necessary to satisfy Rule 9(b) and *Iqbal*. Moreover, Herring does not allege that it would have had an alternative platform for its programs to make up for the revenues it would have lost if it had not entered into the Agreement.

What Herring would have done, but for the "fraud" it alleges, is a fact entirely within Herring's knowledge and control. It does not need discovery to know what it

Gibson, Dunn & Crutcher LLP

11

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1   would have done.  In light of that plain fact, Herring's inability to plead a single,

2   coherent theory about how AT&T's alleged conduct caused it harm underscores the

3   implausible nature of Herring's entire Complaint.

4         Here again, Herring cannot and does not squarely dispute that it must plead a

5   plausible theory of damages to state a claim for fraud.  Instead, it dismisses, again

6   summarily, AT&T's cases as "inapposite."  Opp. at 15 n.6.  AT&T's authority,

7   however, establishes the obvious point that where a plaintiff has not pled a plausible

8   theory of damages, which is an essential element of the cause of action, dismissal is

9   required.  *See, e.g.*, *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1200-01

10  (S.D. Cal. 2010) (dismissing case partially because "it is not apparent how that loss

11  was 'caused' by the misrepresentation since Plaintiff has not suggested exactly what he

12  could have done to stop the foreclosure sale"); *Mora v. U.S. Bank*, 2015 WL 4537218,

13  at *3 (C.D. Cal. July 27, 2015) (dismissing claim because "Plaintiffs have not pled

14  facts showing that they took particular actions in response to Defendant's statements,

15  or refrained from taking action, that led to them being worse off" and because damages

16  allegations that are "purely speculative," "generic," or "do not meet the specificity

17  requirements of Rule 9(b)" are inadequate).

18        Against this on-point authority, Herring offers a 75-year-old out-of-circuit case

19  for the proposition that "[t]he question is not whether the Plaintiff has asked for the

20  proper remedy but whether under his pleadings he is entitled to any remedy."  Opp. at

21  14 (quoting *Kansas City, St. L. & C. R. Co. v. Alton R. Co.*, 124 F.2d 780, 783 (7th Cir.

22  1941).  But that case, too, supports AT&T's argument, not Herring's.  The court there

23  held that "[i]f the appellant has stated a cause of action for any relief, it is immaterial

24  what he designates it or what he has asked for in his prayer; the court will grant him

25  the relief to which he is entitled ***under the facts pleaded***."  *Kansas City*, 124 F.3d at

26  783 (emphasis added).  The problem for Herring is that the facts pleaded *do not*

27

28

Gibson, Dunn &
Crutcher LLP

12

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

*support any relief*, because they do not plausibly allege any theory of damages.[5]  As a result, Herring is wrong that AT&T "does not and cannot argue" that Herring is not entitled to any remedy for the alleged fraud (Opp. at 15-16); indeed, that is precisely what AT&T argues (*see* Mot. at 14-16).  Because Herring has not plausibly pled a theory under which it relied on AT&T's statements **to its detriment, causing it harm**, it has not stated a claim and is not entitled to any relief.

### 4. Herring's Fraud Claims Are Barred by the Economic Loss Rule.

To the extent Herring states a claim for breach of the implied covenant of good faith and fair dealing, the Fraud Claims are barred for the additional reason that the economic loss doctrine prohibits recharacterizing an implied covenant claim as a fraud claim.

Herring argues that the economic loss doctrine cannot apply here because the fraud claims are premised on pre-contract statements, and the implied covenant claim is based on post-contract actions.  Opp. at 16.  That is not the point.  As Herring concedes, the economic loss doctrine prevents a fraud claim for economic loss unless the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Id*. (quoting *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004)).  The economic loss doctrine applies to attempts to recharacterize a claim for a breach of the implied covenant of good faith and fair dealing just as it applies to attempts to recharacterize a traditional breach of contract claim.  *See Lennar Mare*

---

[5] Herring's reliance on *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092 (D.C. Cir. 1985), fails for similar reasons.  *Doe* states that a claim should not be dismissed "when the availability of some relief is readily apparent on the face of the complaint."  753 F.2d at 1104.  Because the availability of relief is not apparent from the complaint here, *Doe* is inapplicable.  And *Gilligan v. Jamco 23 Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), has no relevance at all.  It addresses what the plaintiffs were required to plead, pre-*Twombly*, regarding their financial qualification to rent property, in order to meet the notice pleading standard.  *Gilligan*, 108 F.3d at 249.  Because it involves neither Rule 9, nor the post-*Twombly* Rule 8 standard, nor an allegation of damages, *Gilligan* has no bearing here.

Gibson, Dunn & Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

1    *Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182-KJM-KJN, 2016 WL 829210, at

2    *6-9 (E.D. Cal. Mar. 3, 2016). Accordingly, if Herring states a claim for breach of the

3    implied covenant by asserting that AT&T breached a duty, implicit in the contract, to

4    grow U-verse, then it is limited to that quasi-contract claim to recover the resulting

5    damages. A fraud claim that alleges that AT&T broke the same promise to grow U-

6    verse is therefore improper.

7            **B.**    **Herring's Implied Covenant Claim Would Impermissibly Amend the Contract.**

8            The dispute over whether Herring has stated a claim for breach of the implied

9    covenant of good faith and fair dealing reduces to a simple question: Would Herring's

10   implied covenant claim "impose substantive duties or limits on the contracting parties

11   beyond those incorporated in the specific terms of their agreement"? *Avidity Partners,*

12   *LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013). If so, then Herring is

13   attempting to use extrinsic evidence to alter the terms of a fully integrated writing, in

14   violation of the parol evidence rule (Mot. at 18-19), and, by expanding AT&T's

15   obligations under the contract, is advancing a claim that falls outside the narrow scope

16   of the implied covenant (Mot. at 19-20).

17           That is exactly what Herring is attempting to do. Herring is using the implied

18   covenant claim to alter the express terms of the Agreement, which contains an

19   integration clause. The Agreement does **not** impose any duty on AT&T to maintain its

20   existing subscriber base, to refrain from purchasing a competing platform, or even to

21   continue to operate U-verse at all. To the contrary, the Agreement expressly

22   contemplates the possibility of AT&T shutting down U-verse (either entirely or in

23   certain geographic areas), and expressly contemplates AT&T acquiring a new platform

24   and not putting Herring on it. *See* Smith Decl. Ex. A at 7-8, ¶ C. The radically new

25   obligation that Herring seeks to imply, under which AT&T would be obligated to

26   refrain from "deliberately shifting television subscribers away from U-verse" (Opp. at

27

28

Gibson, Dunn &
Crutcher LLP

14

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

18), runs counter to AT&T's rights under the contract.[6]  Herring's bold assertion that this supposed duty "fits squarely within the implied covenant" is, given the contractual provisions it would contradict, illogical.  *Id.*  The implied covenant claim should be dismissed.

**C.    Herring's Lobbying Claims Do Not Allege a Valid Contractual or Quasi-Contractual Theory.**

**1.    Herring Implicitly Concedes that the Alleged Agreement Is No More Than an Agreement to Agree.**

Herring fails to address AT&T's argument that Herring's Lobbying Claims do not plausibly allege an enforceable promise.  And for good reason: Nothing in Herring's Complaint alleges facts suggesting that Herring and AT&T reached an enforceable agreement that Herring would be carried on DirecTV, as opposed to an agreement to discuss terms for such an arrangement.

As set forth in AT&T's motion, for each of Herring's Lobbying Claims, it must plead a promise that is clear and unambiguous.  *See* Mot. at 22 (citing authorities). Herring does not allege such a promise, as it continues in its Opposition to assert that AT&T promised terms "similar" to the Agreement under which "Herring's channels would be carried on DirecTV."  Opp. at 6.  What are these "similar" terms?  Are some terms "similar" but other terms are different?  And does "similar" mean identical in all material respects or identical in some respects but only "similar" in certain respects and different in other respects?  Given that it took a detailed, 69-page contract to outline the terms on which U-verse would carry Herring, it is implausible, to say the least, that either party would have understood a discussion of reaching a "similar" agreement for DirecTV to be a binding, enforceable contract.  And certainly Herring

---

[6]  As a result, Herring's claim is directly analogous to those in *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 348-50 (2000), and *Avidity Partners, LLC*, 221 Cal. App. 4th at 1204-06.  By Herring's own description, those cases, like this case, involved obligations that were inconsistent with the provisions of the written agreement.  *See* Opp. at 18 n.8.

Gibson, Dunn & Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

offers no fact that tends to exclude the "obvious alternative explanation" for AT&T's supposed breach: that the parties had never discussed and reached an agreement with sufficient specificity to create a binding agreement.

The point can be demonstrated by flipping the propositions. Assume, hypothetically, that before the parties reached a written comprehensive agreement for carrying Herring's programming on DirecTV, Herring changed its mind and for whatever reason no longer wished to have its channels on DirecTV. Clearly AT&T would have had no right to carry those channels against Herring's will, and AT&T could not have enforced any such right in a suit for breach of contract. The same is true as to Herring. The parties never concluded a deal for the carriage of Herring's programming on DirecTV, and the Lobbying Claims fail for that reason.

Because Herring does not address, much less remedy, this fatal flaw, the Lobbying Claims should be dismissed.

### 2. Herring's Proposed "New" Contract Is Unenforceable Because It Is Not in Writing.

Herring's Opposition does not resolve an additional problem facing the Lobbying Claims, namely that the contract and quasi-contract theories that underlie those claims are impermissible oral modifications of a written, fully integrated agreement. Herring concedes that the Agreement requires any contract modifications to be reduced to writing. Opp. at 20. But it contends that the alleged oral contract is not a modification but a freestanding contract.

Courts routinely enforce contractual requirements that amendments be reduced to writing. *See, e.g.*, *Haggard v. Kimberly Quality Care, Inc.*, 39 Cal. App. 4th 508, 521-22 (1995).[7] Herring responds that, in *Haggard*, the "alleged implied contract

---

[7] Although Herring seems to suggest that *Conley v. Matthes*, 56 Cal. App. 4th 1453, 1465-66 (1997), changes this principle of law because it enforced an oral modification to a written agreement, Herring fails to acknowledge that *Conley*, unlike this case, did not involve a clause requiring written modification. Herring's invocation of *Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal. App. 3d
*(Cont'd on next page)*

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR

Gibson, Dunn &
Crutcher LLP

1    embraced the same subject" as the formal written agreement.  Opp. at 20.  But the

2    same is true here: Herring alleges an oral contract to carry its channels on a

3    subsequently acquired platform, a right that the Agreement—which the parties actually

4    entered—*explicitly* denies Herring.  In other words, the Lobbying Claims are premised

5    on an alleged oral contract that is not only on "the same subject" (and between the

6    same parties) as the Agreement, but is actually *directly contrary to* the Agreement.[8]

7          Moreover, the alleged oral contract also violates the statute of frauds, because it

8    cannot be fully performed within one year of execution.  Herring does not dispute that

9    the statute of frauds would, absent an exception, apply to this oral contract.  It simply

10   alleges that the statute of frauds does not apply because Herring fully performed.  *See*

11   Opp. at 20-21.

12         Herring did not, however, fully perform.  Under the alleged oral agreement,

13   Herring is required to provide its channels to AT&T for carriage on DirecTV, in return

14   for AT&T carrying those channels on DirecTV and paying Herring for its channels,

15   **for a five-year period**.  As a result, Herring has not plausibly alleged that it fully

16   performed the supposed "contract," because it has not alleged that it ever tendered its

17   channels to AT&T for carriage on DirecTV, let alone for the required five-year period.

18   Because it has not alleged full performance, the exception on which Herring relies

19   does not apply.

20

21

22   *(Cont'd from previous page)*

23        299, 318 (1986), is similarly unhelpful to it.  *Malmstrom* holds that an "independent
          collateral agreement cannot contradict the terms of a prior written contract," which
24        is precisely what Herring claims has happened here.  *Id.* at 318.

25   [8]  That distinguishes Herring's claims from the cases on which it relies.  *See* Opp. at
          20 (citing *Performance Plastering v. Richmond Am. Homes of Cal., Inc.*, 153 Cal.
26        App. 4th 659, 671 (2007) (involving a new agreement between different parties),
          and *Bing Ting Ren v. Wells Fargo Bank, N.A.*, No. 13-0272 SC, 2013 WL 2468368,
27        at *4 (N.D. Cal. June 7, 2013) (involving an oral promise that amounted to "a
          separate matter altogether").

28

Gibson, Dunn &
Crutcher LLP

D.    **Herring's Citation of Five Paragraphs in Which It Purportedly Distinguished AT&T Services, Inc. and AT&T Inc. Is Inadequate.**

Finally, Herring attempts to remedy its decision to conflate AT&T Services, Inc. and AT&T Inc. by pointing to five paragraphs of its 127-paragraph Complaint in which it mentioned one of the Defendants individually.  Those paragraphs fall far short of alleging a stand-alone fraud count against any individual defendant.  Indeed, the requirement that a plaintiff not "lump multiple defendants together," *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011), would be meaningless if a plaintiff could avoid it simply by including a handful of paragraphs in which it asserted that each defendant was responsible for every allegation in the Complaint.  *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911-12 (C.D. Cal. 2011) (striking general allegations that "each defendant was and is an agent of each of the remaining Defendants" and "each defendant ratified and/or authorized the wrongful acts of each of the other defendants" as inadequate to state a claim against any individual defendant).  Herring's occasional allegations regarding AT&T Inc.'s alleged involvement in various conduct fall far short of laying out the specific roles each entity took in the challenged conduct, as required to state a claim.  *See* Opp. at 22 (citing *TRC & Assocs. v. NuScience Corp.*, No. 2:13-cv-6903-ODW (CWx), 2013 WL 6073004, at *6 (C.D. Cal. Nov. 18, 2013)).  For example, the Complaint does not indicate which entity decided to transfer customers from U-verse, when each entity became aware of the decision, which entity carried out the decision, or similar matters.

Herring also alleges that *Destfino* is not on point because it involved multiple unrelated entities, while Herring sues only two, related entities.  *Destfino*, however, did not turn on these facts but, rather, broadly held that a plaintiff must distinguish between defendants "when suing more than one defendant." *Destfino*, 630 F.3d at 958.  Moreover, numerous cases apply the same rule where the defendants are related entities.  *See Marble Bridge Funding Grp., Inc. v. Liquid Capital Exch., Inc.*, No. 5:15-cv-00177-EJD, 2015 WL 5654844, at *2 (N.D. Cal. Sept. 25, 2015) (allegation is

1  inadequate where plaintiff did not distinguish between "the Canadian franchisor

2  and . . . the Colorado franchisee"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 911

3  (dismissing Complaint that fails to differentiate among "five legally separate and

4  distinct, albeit related, corporate entities," where "factual allegations differentiating

5  among these five entities are scant"); *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1108.

6  **III.   CONCLUSION**

7       For all of the reasons outlined above and in the moving papers, the Court should

8  enter an order dismissing the Complaint.

9  Dated:  June 13, 2016            Respectfully submitted,

10                              GIBSON, DUNN & CRUTCHER LLP

11

12                              By:  /s/  *Marcellus McRae*

13                                Marcellus McRae, SBN 140308

14                            Attorney for Defendants
                           AT&T Services, Inc. and AT&T Inc.,

15                            Appearing Specially

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

AT&T Services, Inc.'s Reply Memorandum in Support of Motion to Dismiss
Plaintiff's Compl. for Failure to State a Claim, Case No. 16-cv-01636-CAS-AGR